CARPENTER *v.* DENNISON.

1. QUIETING TITLE— EQUITY JURISDICTION TO ENTERTAIN BILL WHEN EJECTMENT PENDING.

A court of equity has no jurisdiction under 3 Comp. Laws 1915, § 12302, to entertain a bill to quiet title where plaintiffs claim a legal, record title and do not allege any fraud, accident, mistake, or other grounds of general equity jurisdiction, nor point out any impediment to their defense in an action of ejectment already pending.

2. COURTS—JURISDICTION—WAIVER.

Jurisdiction of the court over the subject-matter may not be acquired by waiver or consent.

3. APPEAL AND ERROR—DENIAL OF MOTION TO DISMISS—RIGHT OF APPEAL.

Defendant's right to appeal from denial of motion to dismiss bill is not absolute, but under 3 Comp. Laws 1915, § 13753, depends upon obtaining an order of a Justice of the Supreme Court to do so.

4. SAME — DENIAL OF MOTION TO DISMISS — JURISDICTION — RES
    JUDICATA.
    Where defendant's motion to dismiss bill to quiet title on
    jurisdictional grounds was denied and without appealing
    therefrom he answered, reserving "all right of exception
    to the said bill of complaint," the question of jurisdiction
    is not therefor *res judicata*, but is open upon appeal from
    the decree.

, Appeal from Kent; McDonald (John S.), J. Sub-
mitted October 15, 1919. (Docket No. 50.) Decided
December 23, 1919.

Bill by Norman Carpenter and another against Wil-
liam H. Dennison to quiet title to land, and to enjoin
an action of ejectment. From a decree for plaintiffs,
defendant appeals. Reversed, and bill dismissed.

*Smedley & Linsey,* for plaintiffs.

*P. H. Walsh,* for defendant.

FELLOWS, J. On the 6th day of February, 1919, the
defendant here, William H. Dennison, brought suit in
ejectment in the Kent circuit court against the plain-
tiffs here, Norman Carpenter and Morris Carpenter,
to recover the possession of the south ½ of the south-
east ¼ of the northeast ¼ of section 26 of the town-
ship of Sparta in Kent county. On February 17th,
these plaintiffs filed this bill in the circuit court for
the county of Kent, in chancery, to quiet their title
to said premises and to restrain the further prosecu-
tion of such ejectment case. They claim a legal, rec-
ord title and do not allege any fraud, accident, mis-
take, or other grounds of general equity jurisdiction,
nor do they point out any impediment to their defense
in the action of ejectment already pending. Defend-
ant first moved to dismiss the bill on jurisdictional
grounds, and upon such motion being overruled, an-
swered, reserving to himself, however, "all right of

exception to the said bill of complaint"; and upon the hearing of the case in the court below and in this court he insists that a court of equity is without jurisdiction to entertain this bill to quiet title and to restrain the further prosecution of the ejectment case pending in the court which first obtained jurisdiction of the controversy between these parties over the premises here, and there, involved.

The plaintiffs insist upon their right to maintain this bill under the following provisions of section 12302, 3 Comp. Laws 1915:

"The powers and jurisdiction of the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England as existing on March first, eighteen hundred forty-seven, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this State.  Said circuit court in chancery shall also have jurisdiction and authority:  * * *

"4. To hear and determine suits instituted by any person claiming the legal or equitable title to lands, whether in possession or not, against any other person not in possession, setting up a claim thereto in opposition to the title claimed by the plaintiff: And, if the plaintiff shall establish his title to such lands, the defendant shall be decreed to release to the plaintiff all claims thereto."

While this subdivision of the section in its present form is the result of amendments, it originally was enacted in 1840 (Act No. 76, Laws 1840, p. 127).  It has generally been recognized as declaratory of recognized jurisdiction of the courts of equity with amplification of their powers, and its object has been recognized by this court to be to enable one in possession of real estate (now including one out of possession where the other party is also out of possession) to remove all doubts as to his title caused by claims of third persons who are taking no steps to test the

validity of their claim and who by their refusal or neglect to take proceedings to have their title adjudicated cast a doubt upon the title which without the interposition of a court of equity remains a cloud upon such title to the injury of the true owner. But it has never been held, as we shall presently see, that the object of the act was to afford a defendant in an ejectment suit the option to deprive the plaintiff of his right to a trial by a jury, and permit him to elect in which court he would try the question of title.

Counsel for plaintiffs, in support of the contention that the bill is maintainable, cite the following cases: *Woods* v. *Monroe*, 17 Mich. 238; *Dale* v. *Turner*, 34 Mich. 405; *Olsen* v. *Williams*, 172 Mich. 316; *Conley* v. *Sinclair*, 163 Mich. 306; *Grand Trunk, etc., R. Co.* v. *Fuller*, 205 Mich. 486. But a careful examination of these cases shows that in each of them there were facts alleged bringing the case within the jurisdiction of a court of equity and calling for equitable relief, and that each case is clearly distinguishable from the instant case.

In *Woods* v. *Monroe, supra,* the defendants were severally bringing actions of ejectment with reference to a portion only of the premises involved. This court there said:

"The defendants were severally bringing actions against him in respect to one of the lots, and as he had an unquestionable right to file a bill to quiet his title to the others, and the questions were the same as to all, it was proper that, to avoid a mutiplicity of suits, the ejectment suits should be enjoined, and the questions in controversy be all determined in one proceeding. Besides, the record title was in the defendants, which, of itself, would justify the bill."

In *Dale* v. *Turner, supra,* which involved the Federal and State legislation concerning swamp lands, this court expressly pointed out that complainant's title was an equitable title (p. 417).

In *Olsen* v. *Williams, supra,* the bill was filed to prevent a multiplicity of suits and upon that point this court cites and quotes from *Woods* v. *Monroe, supra.*

In *Conley* v. *Sinclair, supra,* an ejectment case had been instituted 25 years before by one Thomas Sinclair; it had been tried and a judgment rendered against Sinclair, which judgment had been affirmed by this court. A new trial had been granted under the statute then in force but the case had thereafter abated. The ejectment case was, therefore, no longer pending. It was held by this court that upon the abatement of the ejectment case the holder of the title could maintain a bill to quiet title.

In *Grand Trunk, etc., R. Co.* v. *Fuller, supra,* the question of jurisdiction was not considered, but an examination of the case will disclose that the plaintiff sought and obtained relief on equitable grounds.

Each of these cases presented a case for equitable relief upon equitable grounds and is in no way out of harmony with a long line of holdings by this court announcing the general rule that courts of law are the proper forum for the adjudication of legal titles. Among the numerous cases see *Stockton* v. *Williams,* Walk. Ch. 120; *Devaux* v. *City of Detroit,* Harr. Ch. 98; *Blackwood* v. *Van Vleet,* 11 Mich. 252; *Moran* v. *Palmer,* 13 Mich. 367; *Tabor* v. *Cook,* 15 Mich. 322; *Methodist Church of Newark* v. *Clark,* 41 Mich. 730; *Chandler* v. *Graham,* 123 Mich. 327; *Moody* v. *Macomber,* 158 Mich. 209; *Berger* v. *Roe,* 179 Mich. 184. We quote from the syllabus in *Moran* v. *Palmer, supra:*

"A bill to quiet title will be entertained on behalf of the legal owner when he is not in a position to force the adverse claimant into a court of law to test its validity; but when each party claims the legal title, and a court of law is already possessed of the case, and it is not alleged that either fraud, accident or mis-

take has intervened to prevent the possessor establishing his title at law, equity will not interfere."

This case was written when parties, as a matter of right, had two trials in ejectment cases, and defendants had successfully maintained their rights upon the first of these trials. Mr. Justice COOLEY, speaking for the court, said:

"We have thus presented to us the anomaly of a party who asserts that he is possessed of a complete legal title to lands which are occupied by him, and who points out no difficulty in the way of his exhibiting and establishing such title, appealing to a court of equity for relief against the claims of other parties who are pressing their claims against him at law, and have already obtained an adjudication in their favor. Argument to show that this bill cannot be sustained is entirely unnecessary."

In *Tabor* v. *Cook, supra,* the same Justice, speaking for the court, said:

"It is not in the power of the legislature, under our present Constitution, to provide for the trial of titles to land in equity, in the cases which were triable at law at the time the Constitution was adopted, unless it shall first make provision for having the case tried by jury if the defendant shall so elect."

In *Methodist Church of Newark* v. *Clark, supra,* it was said:

"The bill is a bill to quiet title. A bill for that purpose is based upon an actual possession by complainant of the land in dispute, and when sustained, it is upon the ground that complainant has no other means of bringing his title to an adjudication."

And in *Moody* v. *Macomber, supra,* Mr. Justice MONTGOMERY, speaking for the court, said:

"We think it far better that the practice should be adhered to, and that the title to real estate should not be left to be tried in equity where the remedy of ejectment is open, unless the case is distinctly brought under some other head of equity jurisprudence."

But it is insisted by plaintiff's counsel that defendant is not in position to raise this question; that the order denying defendant's motion to dismiss is *res adjudicata;* that not having been appealed from, it is final and the question not now available. This overlooks the character of the question under consideration, that it is a question of jurisdiction, and of jurisdiction of the court over the subject-matter. While opinions may be found in this court holding that this question of jurisdiction may be waived, and cases which have disposed of the controversy notwithstanding the jurisdictional question, the tendency of the later decisions of this court is to hold that jurisdiction of the subject-matter, jurisdiction of the case itself, jurisdiction of the court, may not be acquired by waiver or consent. *Riley* v. *Railway,* 163 Mich. 327; *J. F. Hartz Co.* v. *Lukaszcewski,* 200 Mich. 230; *Bolton* v. *Cummings,* 200 Mich. 234; *Miller* v. *Johnson,* 201 Mich. 535; *Monroe, Boyce & Co.* v. *Ward,* 207 Mich. 369. The defendant made his motion to dismiss, he reserved the question by his answer, he seasonably raised the question on the hearing. This court in three of the cases last above cited, upon its own motion, dismissed writs of error where it had not acquired jurisdiction. Defendant had no absolute right to appeal to this court from the order denying his motion to dismiss. By section 13753, 3 Comp. Laws 1915, he could only do so by obtaining an order of a Justice of this court.

The question of jurisdiction of the court over the subject-matter is here open to the defendant to urge upon this record and his contention is sustained. A decree will be entered dismissing the bill with costs of both courts to defendant.

BIRD, C. J., and SHARPE, MOORE, STEERE BROOKE, STONE, and KUHN, JJ., concurred.